## PFEIFFER *v.* BERTIG.

### Opinion delivered January 19, 1920.

1.  DRAINS—INTEREST ON ASSESSMENTS.—Without some statute expressly or impliedly allowing it, interest can not be allowed on assessments or included therein.

2.  DRAINS—INTEREST ON ASSESSMENTS.—Special and Private Acts 1911, No. 196, extending the limits to the St. Francis Drainage District, and referring to Acts 1909, No. 235, contemplated that where money is borrowed by that district or by a subsidiary district for making the improvements for which the district was created the assessment of benefits shall bear interest, so that the directors might issue bonds which with principal and interest would exceed the amount of assessed benefits, but which would not exceed the assessed benefits with interest.

3.  CONSTITUTIONAL LAW—FREEDOM OF CONTRACT.—Special and Private Acts 1911, page 533, providing that "where the payment of the benefits assessed is deferred or made payable in installments" and bonds are issued, the benefits assessed shall bear interest at the rate fixed by the board, does not prohibit. the landowner .from paying his assessments, nor make the interest a penalty, and hence does not interfere. with the right of contract.

4.  DRAINS—INTEREST ON ASSESSMENTS—RIGHT TO COMPLAIN.—Where a landowner against whom benefits had been assessed sued to restrain the district from issuing bonds or incurring any indebtedness which could not be paid.within the limits of the assessed benefits, but did not tender the amount of his assessment of benefits, he was in no position to complain that the assessment bore interest.

5.  DRAINS—INTEREST ON ASSESSMENTS.—A provision expressly allowing present payment of the assessment of benefits is not essential to give validity to acts authorizing the collection of interest on such assessments.

Appeal from Greene Chancery Court; *Archer Wheatley,* Chancellor; affirmed.

· *Huddleston, Fuhr & Futrell,* for appellant.

1.  The court erred in overruling the demurrer to the answer.  Act 196, Acts 1911, sections 7 and 8, only apply to the parent act and not to subsidiary districts. These sections only apply to the parent district, and subsidiary districts have no power to issue interest-bearing bonds when principal and interest greatly exceed the benefits assessed.  Subsidiary district No. 11 is not entitled to claim the benefits of the provisions of the acts, but the interest must be considered a part of the construction, and the benefits draw no interest, and the cost of .construction exceeds the benefits and the demurrer should be sustained.

2.    The act is not a valid exercise of the legislative power.  16 Atl. 728; 40 *Id.* 288-290; 42 S. E. 468; 67 N. C. 264-5.

*Rose, Hemingway, Cantrell & Loughborough,* for appellees.   ·

Subsidiary districts are controlled by the laws applicable to the drainage districts created under the general

act of 1909 and amendments thereto, and the case is controlled by the case in 122 Ark. 291.

WOOD, J. Appellant filed his complaint against the appellees in the Greene Chancery Court. The appellant alleged that he "is the owner of the lands situated within the limits of Grassy Slough Subsidiary Drainage District No. 11 of the St. Francis Drainage District which has been organized in pursuance of the statutes governing St. Francis Drainage District. The benefits within the said districts have been assessed at the sum of $146,590, and the defendants as commissioners of said district are about to make a contract for the issuing of $120,000 of the negotiable bonds of said district, payable serially in the course of the next twenty years. The principal and interest of said bonds will greatly exceed the amount of the benefits assessed, and therefore the defendants have no right to issue said bonds; but if said bonds are issued they will get into the hands of innocent purchasers, and the plaintiff will be harassed in the United States courts by vexatious suits. The plaintiff, therefore, prays that the defendants be restrained from issuing the bonds aforesaid or from incurring any indebtedness which cannot be paid within the limits of the assessed benefits and for such other relief as may be deemed equitable."

The appellees answered alleging: "It is true that the assessed benefits within said subsidiary drainage district amount to $146,590, and that the defendants contemplate the issuing of $120,000 in bonds, payable serially in the course of twenty years, and that the principal and interest of said bonds will exceed the amount of the assessed benefits; but they say that, by the terms of the act under which said district was organized, said assessment of benefits bears interest at the rate of six per cent. per annum, which is a rate in excess of that borne by the bonds, so that there is no possibility of the amount due upon the bonds exceeding the assessed benefits with interest."

The appellant filed a general demurrer to the answer which was overruled by the court.

The appellant stood on his demurrer, whereupon the court entered a judgment dismissing his complaint for want of equity and taxing him with the costs. From which judgment he appeals.

Act 196 of the acts of the Special and Private Acts of 1911 provides in part as follows:

"Section 7. That in no case shall the board of directors of the St. Francis Drainage District construct or make any improvements contemplated by the provisions of said act unless the benefits estimated by the assessors and approved by the county court shall equal or exceed the primary cost of the making of such improvements; but the cost of making the improvements shall not be held to include the interest accruing on any interest-bearing evidence of debt issued for the purpose of making and maintaining the improvements."

"Section 8. In all cases where the payment of the benefits assessed is deferred or made payable in installments and bonds are or shall be sold or money borrowed for the purpose of making or maintaining any such improvements, the benefits, whether already assessed or hereafter to be assessed on the several parcels of property, shall bear interest at a rate to be fixed by the board sufficiently high to meet or cover the interest on such bonds or indebtedness, and when so done, it shall be held that the same is done for the benefit of the persons who own the lands assessed for making the improvements in proportion to the benefits assessed, and any amount levied or assessed for the purpose of paying interest on bonds issued or money borrowed to make or maintain any such improvements shall be held and construed to be as interest on the benefits accruing from the construction of the improvements."

These sections clearly contemplate that where money is borrowed by the board of directors of the St. Francis Drainage District for the purpose of making the im-

provements for which the district was created the assessment of benefits shall bear interest.

Section 8 expressly provides that the benefits "shall bear interest" and declares that the purpose of making the assessment of benefits bear interest is "to meet or cover the interest on such bonds or indebtedness."

It is well established that the question as to whether the assessment of benefits shall bear interest is one controlled entirely by statute. "In the absence of some statute expressly or implicitly authorizing interest, interest cannot be allowed on assessments or included therein." 1st Page and Jones "Taxation by Assessment," p. 474, and cases cited in note.

Learned counsel for appellant contends that the above sections have reference solely to the original St. Francis Drainage District, but do not apply to subsidiary districts of the original or parent district. Counsel are mistaken in their contention. Sections 7 and 8 are part of an act entitled, "An act to extend the limits of the St. Francis Drainage District and for other purposes." Section 9 of the act provides in part as follows:

"The St. Francis Drainage District was organized for the purpose of establishing a main system of drains and levees for the protection of the lands in said district taken as a whole, and it is realized that in order to make said drainage and levee system effective it will be necessary to construct special systems of drainage and levees for various sections of the territory within said general drainage and levee district."

Provision is then made whereby the board of directors of the St. Francis Drainage District may establish upon the terms and conditions therein prescribed subsidiary drainage and levee districts. When the conditions prescribed are complied with, "if the board deems it to the best interest of owners of real property within said district that the same shall become a subsidiary drainage district, it shall make an order upon its records establishing the same as a drainage district, subject to all the terms and provisions of this act."

There is a further provision making the board of directors and the assessors of the St. Francis Drainage District the directors and assessors of the subsidiary districts and providing that the assessors in making the assessment of benefits of the subsidiary districts shall be governed by the act and the amendments thereto creating the St. Francis Drainage District approved May 12, 1909, being Act 235, Acts 1909.

The act further provides that the board of directors of the St. Francis Drainage District may borrow money in the name of the subsidiary district and issue bonds bearing the rate of interest not exceeding 6 per cent. and giving them power to levy taxes upon the assessed benefits within the district in a sufficient sum to pay the interest on the bonds and the principal as they mature.

The section contains this further provision, "except as herein provided, such subsidiary districts shall be governed by the 'act to provide for the creation of drainage districts in this State, approved May 27, 1909, and the amendments thereto.' "

While section 9, *supra,* providing for the creation of subsidiary districts, comes after sections 7 and 8 above, that is of no consequence in construing the statute. It is clear from the whole act that the original or parent St. Francis District and the subsidiary districts created under the act of 1911 were under the terms of that act to be considered as an entire project having for its purpose the establishment of a drainage district and levee system that would be effective to cover the entire territory included within the general drainage and levee districts.

Therefore, we conclude that sections 7 and 8 were intended to apply to the subsidiary districts as well as to the original or parent district. They were embraced in the same act with section 9 and must be considered in connection with that section. There is no language in sections 7 and 8 expressly limiting their application to the benefits assessed in the original or parent district. And, in the absence of such express restriction, they can

not be confined in their application solely to the parent district.

The language, "except as herein provided, such subsidiary district shall be governed by the 'act to provide for the creation of drainage districts in this State,' " expressly makes sections 7 and 8 applicable to subsidiary districts as well as the parent district. Certainly sections 7 and 8 are included in and are a part of the provisions of the act and come within the words, "as herein provided." We can not, therefore, agree with counsel for the appellant nor with counsel for the appellees, who seem to be in accord on the proposition, that in the matter of assessment of benefits bearing interest subsidiary districts are governed by the act approved May 27, 1909, and the amendments thereto. If this were the case, then there is no authority for making the assessments of benefits bear interest, for at the time of the passage of the Act 196 of the Acts of 1911, neither the original act approved May 27, 1909, nor the acts amendatory thereto so provided. See Acts 54, 136, 221 of the General Acts of 1911.

Such authority was not given by statute until the passage of Act 177 of the Acts of 1913, approved March 13, 1913. But this act was not in existence until something like two years after the passage of Act 196, approved April 20, 1911, under which the Grassy Slough Subsidiary Drainage District No. 11 of the St. Francis Drainage District was formed.

The language of the act under which the district in controversy was created (Act 196, Acts of 1911) expressly provides that, "except as herein provided, such subsidiary district shall be governed by the 'act to provide for the creation of drainage districts in this State, approved May 27, 1909, and the amendments thereto.' " The language last quoted, of course, has reference only to the act of May 27, 1909, and the amendments thereto that were then in existence. It had no reference whatever to future amendments of that act.

Learned counsel for the appellees are mistaken in assuming that the decision of this court in *Oliver* v. *Whittaker,* 122 Ark. 291, rules this case. In *Oliver* v. *Whittaker, supra,* we had under consideration an original or parent drainage district which was created under the general statute of May 27, 1909. The district in that case was organized and the assessment of benefits made after the passage of Act 177 of the Acts of 1913. We held that Act 177, approved March 13, 1913, amending the general statute of 1909 was applicable in that case and authorized the collection of interest on deferred payments of assessments. But here as we have seen the district was created under Act 196 of the Acts of 1911 providing for subsidiary districts, which act as we construe it made the general law of May 27, 1909, and the amendment thereto, which were then in existence, applicable to subsidiary districts created under it, except as therein provided. Sections 7 and 8, *supra,* were therein provided and applied to assessment of benefits.

Counsel for appellant contends that sections 7 and 8 are void for the reason that they make no provision for the landowner to pay the assessment of benefits against his land. They say that such in effect denies to the appellant the right of contract, and that the interest which he is, therefore, compelled to pay is in the nature of a penalty.

It will be noted that section 8 provides, ''where payment of the benefits assessed is deferred or made payable in installments.'' This language seems to contemplate that the benefits might not be deferred. Certainly there is nothing in the act which expressly prohibits the landowner from paying his assessments when made.

In appellant's complaint he does not tender the amount of his assessment of benefits nor is there any allegation in the answer to the effect that there was a tender by appellant of the amount of the benefits assessed. So the appellant is really not in an attitude to complain that the assessment of benefits bears interest. See *Heath* v. *McCrae,* 55 Pac. 433, 20 Wash. 343; *Barber Asphalt*

*Paving Co.* v. *Gogreve,* 5 So. 849, 41 La. Ann. 252; *Newman* v. *City of Emporia,* 21 Pac. 593, 41 Kan. 560.

The allegations of the answer show that to make the improvements the directors of the district contemplated the issuance of bonds which were to be paid serially through a course of twenty years. As the appellant got the benefit of the money derived from these bonds in the present improvement of his property, and since the payment of his assessment was deferred, it was but just and right under such a state of case that he should be made to pay interest on the assessment of benefits. At least such was the judgment of the lawmakers, and the act does not interfere with the right to contract.

Our attention has not been directed to any cases where it is held that a provision expressly allowing present payment of the amount of benefits assessed is essential to give validity to acts authorizing the collection of interest on the assessment of benefits, and our own research has not discovered any cases so holding. On the contrary, the authorities seem to uphold statutes where no such provision is made. See *People* v. *Webber,* 45 N. E. 723, 164 Ill. 412; *Edwards & Walsh Const. Co.* v. *Jasper,* 90 N. W. 1006, 177 Iowa 366; *Langdon* v. *Bitzer,* 82 S. W. 280, 26 Ky. 579; *Germond* v. *City of Tacoma,* 33 Pac. 961; Page and Jones "Taxation by Assessment," *supra.*

In *Skillern* v. *White River Levee District,* 139 Ark. 4, the act provides that the amount of the assessment of benefits should be automatically increased 6 per cent. per annum. This was tantamount to making the benefits bear interest at the rate of 6 per cent. per annum. We held that the statute was valid. There was no provision in that statute for the present payment of benefits.

It follows that the judgment of the court overruling the demurrer to the answer and dismissing the appellant's complaint for want of equity is in all things correct.

Affirmed.

HART, J., dissents.