SUMMERS *v.* COLE.

Opinion delivered June 21, 1920.

1. STATUTES — CONTRADICTORY PROVISIONS.—1 Road Laws 1919, p. 374, as amended in 1920, confirming, in section 4, as just and equitable the assessments as shown by the assessment books provided for by the original act, and providing, in section 6, that such assessment books shall be the basis of apportionment of the ben-

efits, that the total benefits shall be 50 per cent. in excess of the cost of construction, and that assessments may be levied up to the amount of the cost of the improvement including necessary expenses of the district and interest on its obligations, *held* that sections 4 and 6 are not contradictory.

2. STATUTES—DUTY TO RECONCILE CONFLICT.—It is the duty of courts to reconcile apparent conflicts in a statute for the purpose of ascertaining the true legislative will, if this can be done without disregarding the plain meaning of the language used.

3. STATUTES—CONSTRUCTION AS A WHOLE.—The intention of the lawmakers is to be deduced from a view of the whole, and every part of a statute is to be taken and compared together.

4. HIGHWAYS — LEGISLATIVE ASSESSMENT.—Where the Legislature fixed the maximum road improvement assessments in a certain district at 150 per cent. of the actual cost of construction, not including overhead expense and interest on bonds, it will be presumed that the lawmakers had before them information as to the cost of construction, and found that the benefits to the land would amount to 50 per cent. in excess of such cost.

5. HIGHWAYS—ASSESSMENT OF BENEFITS—INTEREST.—While the Legislature may not authorize assessments in excess of estimated benefits, even for the purpose of paying interest on bonds, it can authorize the charge of interest on postponed assessments, and such interest is not to be treated as part of the cost of improvement, but may be imposed in addition to the assessed benefits.

Appeal from Faulkner Chancery Court; *Jordan Sellers,* Chancellor; affirmed.

*George F. Hartje,* for appellant.

Section 6 of act No. 82, Acts 1920, is void, as it is contradictory to the terms of section 4 of the same act, and because it provides for an arbitrary and unjust assessment on the property of appellant. 125 Ark. 422; 130 *Id.* 410. The commissioners are attempting to exceed their authority.

*R. W. Robins,* for appellees.

1. There is no contradiction between § 4, act 82, Acts 1920, and § 6 of said act. When read together, they provide a simple and effective scheme for paying the cost of a road the Legislature found to be necessary. 22 Ark. 369; 28 *Id.* 200; 30 *Id.* 135; 38 *Id.* 205; 89 *Id.* 378. The intention of the Legislature should be given effect.

116 *Id.* 538. Similar acts have been approved by this court. 134 Ark. 447.

2. There is no provision in the Constitution requiring the Legislature to limit the cost of an improvement district. See cases in 134 Ark. 30; 136 *Id.* 524; *Brenson* v. *Bush,* U. S. Ct. Adv. Op. No. 5, p. 131. The courts presume acts of the Legislature to be valid unless shown clearly to be unconstitutional. 12 Wheat. 213; 99 U. S. 700. All doubts are resolved in favor of the constitutionality of an act. 99 Ark. 1; 102 *Id.* 166.

3. A mere general allegation that assessments are arbitrary and excessive is not sufficient. 98 Ark. 113. But here the increase is neither arbitrary nor excessive. The cost of everything has gone up and courts take judicial knowledge of the increased cost of labor, materials, etc. 142 Ia. 658; 5 Ga. App. 402; 183 Mo. App. 608.

McCulloch, C. J. The General Assembly at the regular session of 1919 (Special Road Acts, vol. 1, p. 374), enacted a statute creating a road improvement district in Faulkner County, designated as the Damascus Road District of Faulkner County. The statute described the district and the road to be improved, and assessed the benefits on the land in the district by zones according to distance from the road to be constructed. The statute divided the district into zones and assessed the benefits at a percentage of the value of the land according to the assessment for State and county taxation purposes. The benefits on land in zone 1, which is nearest to the road, were assessed at 90 per centum of the value according to said assessment for State and county purposes, and the assessments in other zones were diminished according to distance from the road. It is provided in the statute that the county surveyor should prepare and file in the office of the county clerk a certificate "showing in appropriate manner the different zones of the land situated therein as above set forth and showing the government subdivisions and any recorded plats of land located outside of the city of Conway and railroad,

telegraph and telephone lines and rights-of-way," etc., and that the county clerk should within ten days after the filing of the plat by the surveyor "proceed to prepare at once in a well-bound book provided for that purpose an assessment list showing the name of the owner of each tract of land as shown by the last assessment of real estate on file in his office and the betterment accruing to each tract of land as herein ascertained and declared, and said assessment list shall be the assessment of said district, and the taxes levied as hereinbefore provided shall be computed thereon."

The General Assembly at the special session in January, 1920, enacted another statute amending the original, and the two sections which relate to the present controversy are as follows:

"Section 4. The assessment for all of the above mentioned road districts and also the assessments for Road Improvement District Number Five of Faulkner County (except assessments on which appeals have heretofore been filed in the Faulkner Chancery Court, and except the assessments mentioned in section 1 of this act), as shown by the assessment books for said districts, respectively heretofore prepared by the county clerk of Faulkner County and now on file in his office, are hereby approved and confirmed, same being found and hereby declared to be fair, just and equitable; *provided,* that the county clerk of said county may at any time correct any incomplete or incorrect description of any real estate on any of said assessment books."

"Section 6. It is hereby declared and ascertained that the lands and real property embraced in each of the above named districts, respectively, will be benefited in an amount equal to fifty per cent. in excess of the cost of the construction of the road authorized by the act creating each of said districts, respectively, along the general route of the road designated in the above mentioned acts creating said districts, respectively, and that the assessments for said districts as shown by said assessment books, respectively, provide a just and equita-

ble basis for apportioning the cost of said improvements, respectively, against the various tracts and parcels of land and real property in each of said districts, respectively. And, should assessments for any of said districts with interest thereon as herein provided for, be found to be insufficient to defray the cost of the said improvement within the district, including necessary expenses of said district and interest on all obligations of said district, the county court shall make an order levying such additional portion of or rate upon the said original assessment, to be collected in the manner provided in the act of the General Assembly creating said district for the collection of taxes for such district, as will be necessary to pay any balance of the cost of said improvement including necessary expenses of such district and interest on its obligations.''

Appellant, the owner of real property in the district, instituted this action to restrain the commissioners of the district from proceeding toward the issuance of bonds and the construction of the improvement, and he alleged in his complaint that the assessment list, as prepared and filed by the county clerk in accordance with the provisions of the original statute, showed that the benefits to the lands amounted to the sum of $273,-492.93. but that the commissioners were about to issue bonds in the sum of $350,000 to construct the road, which it is alleged would cost that sum.

The contention is that section 4 of the statute as set out above, constitutes a legislative assessment by confirming the list as filed by the clerk and that the cost of construction and the amount of the bond issue can not exceed the total amount of benefits shown by that list. It is argued that the two sections set forth above are contradictory, and that unless section 4 controls as the legislative assessment of benefits the statute should be held to be void on account of the contradiction between the two sections. Our conclusion is that the contention of appellant is not correct, and that the two sections of

the statute should be considered together for the purpose of construing their effect.

The assessment list referred to in section 4 was made pursuant to the directions of the original statute, and, if nothing else should be considered but the language of section 4 as amended, it should be construed to mean merely a confirmation of the list prepared by the clerk as the proper assessment of benefits. Construing the language of the two sections literally, there is apparent conflict, but it is our duty to reconcile that conflict for the purpose of ascertaining the true legislative will, if we can do so without disregarding the plain meaning of the language used. We have often said that the intention of the lawmakers "is to be deduced from a view of the whole, and every part of a statute to be taken and compared together." *McNair* v. *Williams,* 28 Ark. 200; *Ingle* v. *Batesville Grocery Co.,* 89 Ark. 378; *West* v. *Cotton Belt Levee District No.* 1, 116 Ark. 538.

Section 4 as amended provides that the assessment lists filed by the clerk "are hereby approved and confirmed, same being found and hereby declared to be fair, just and equitable;" but section 6 provides "that the lands and real property embraced in each of the above named districts, respectively, will be benefited in an amount equal to fifty per cent. in excess of the cost of construction of the road authorized by the act, * * * and that the assessments for said district as shown by said assessment books, respectively, provide a just and equitable basis for apportioning the cost of said improvements."

Section 6 not only declares in express terms that the total benefits shall be fifty per cent. in excess of the cost of construction, and that the assessment lists filed by the clerk shall be the basis of apportionment of the benefits, but it also authorizes the levy of assessments up to the amount of the cost of the improvement "including necessary expenses of the district and interest on its obligations." It is clear from section 6 that the

Legislature meant to authorize the levy of assessments of sufficient amount to pay for the construction of the improvement and other necessary expenses and the interest on bonds, not exceeding 150 per cent. of the actual cost of construction, and that the original assessment list as certified by the clerk is the assessment fixed at the percentage declared in the original statute to be the basis of apportionment. The maximum is fixed at 150 per centum, not of the total cost, including overhead expense and interest on bonds, but the actual cost of construction of the road. The lawmakers did not intend to fix benefits at fifty per cent. in excess of the total cost including all expenses and interest, but what they meant to do was to declare the benefits to be 150 per cent. of the actual cost of construction. *Oliver* v. *Whittaker,* 122 Ark. 291.

The language of section 6 is explanatory of the language of the preceding section, and the two sections when read together can, we think, be harmonized, and it is our duty to do so. Treating section 4 as the lawmakers evidently treated it, if we give any effect at all to the language of section 6, as a declaration of a just and equitable basis for the apportionment of benefits, the conflict between the two sections disappears. The lawmakers are presumed to have had before them information as to the cost of the construction of the road according to the plans and specifications and to have found that the benefits to the land would amount to fifty per cent. in excess of the cost of construction, and they intended by this statute to authorize the levy of assessments for the purpose of paying for the cost of the improvement and the other expenses including interest on the bonds up to the maximum of benefits thus declared.

The chancellor was correct in his interpretation of the statute and the decree is therefore affirmed.

HART, J. (dissenting). It is perfectly apparent that the majority opinion has eliminated section 4 from the

act. The opinion recognizes the general rule that it is the duty of the court to give effect to every section of the act, and to harmonize them if possible. It then proceeds to harmonize them by saying that section 6 is explanatory of section 4, and that when read together they mean that the assessment of benefits, made by the Legislature when the original act was passed and extended on the assessment books pursuant to the terms of the act, is merely a just and equitable basis for apportioning the benefits. In short, it holds that the assessment of benefits originally made by the Legislature is not an assessment of benefits, but is merely a declaration of a just and equitable basis for the apportionment of benefits, and says that by this construction the conflict between the two sections vanishes. The practical effect of this construction is to give no meaning whatever to section 4. The court has no more right to eliminate section 4 than it would have to eliminate section 6 and give no meaning to it. Section 4 plainly says that the assessment books extending the assessment of benefits as made by the Legislature in the original act is approved and confirmed, the same being found and hereby declared "to be fair, just and equitable."

Section 6 does not purport to be explanatory of section 4 as declared in the majority opinion. In the first place, the language of section 4 is so plain that it speaks for itself. Moreover, section 6 deals with a different phase of the question. Section 6 does not refer to section 4, but provides for an additional assessment of benefits if necessary to defray the cost of the improvement, and declares that for this purpose the assessment books provide a just and equitable basis for apportioning the cost of the improvements against the various tracts of land in the district. This is clearly shown by the concluding part of section 6, which provides for an additional assessment to defray the cost of the improvement, including necessary expenses and interest on all obligations, should the original assessment be found insufficient to pay such costs. Section 6 is therefore in direct con-

flict with section 4, and is contradictory to it, and the conflict renders the act void. It is our duty to construe the language according to its plain meaning. We have no more right to say that the Legislature did not intend section 4 to have any meaning than we have to say that it did not intend section 6 to have the meaning which its language clearly imports. In short, section 4 in plain terms confirms the original assessment made by the Legislature, declaring it to be fair, just and equitable.

Section 6 provides that if the original assessment is insufficient to defray the cost of the improvement, including necessary expenses and interest, an additional assessment shall be made to pay such cost and expenses, and that for this purpose the original assessment shall be considered as a just and equitable basis for apportioning the cost of the improvement. If the language in section 4 is to be given its plain and ordinary meaning, section 6 is an arbitrary assessment of benefits by the Legislature; for it is evident that if the assessment made by the original act and approved by section 4 is just and equitable, no additional assessment of benefits can be made. Neither the Legislature nor any other body or tribunal can make an arbitrary assessment of benefits. *Bush* v. *Delta Road Imp. Dist.*, 141 Ark. 247.

Mr. Justice SMITH concurs in this dissent.

OPINION ON MOTION TO MODIFY.

McCULLOCH, C. J. A modification of the opinion in this case is asked for by appellee on the ground that our construction of the statute was erroneous in holding that the assessments were fixed by the Legislature at one hundred and fifty per cent. of the actual cost of construction, exclusive of interest on bonds and other expenses, and also in holding that the total levy of assessments can not exceed the maximum benefits thus determined.

Counsel for appellee bring to our attention section 5 of the statute, which reads as follows:

"Section 5. The amount of interest which will accrue on bonds issued by any of said districts shall be in-

cluded and added to the tax to be collected for such district, but the interest to accrue on account of the issuing of said bonds shall not be construed as a part of the cost of construction in determining whether or not the expense and costs of making said improvements are or are not equal to or in excess of the benefits assessed. The landowners shall have thirty days after the passage of this act in which to pay their assessment in full, but all said assessments shall be made payable in installments so that not more than twenty per cent. thereof shall be collectable in any one year against the wishes of the landowners, and in the event that any landowner avails himself of this indulgence the assessed benefits shall bear interest at the rate of six per cent. per annum and shall be payable only in installments as levied. The levy of assessments may be made by way of proportional amounts of the total assessed benefits and the interest need not be calculated until it is necessary to do so to avoid exceeding the total amount of benefits and interest, or the interest may first be collected, at the discretion of the board.''

We think that this section of the statute tends to strengthen rather than to weaken our position in the former opinion in holding that the legislative determination of benefits was not based on the total cost of the project, including interest and other expenses. Section 5 draws the distinction between interest on bonds and other expenses to be incurred, and expressly declares that such interest shall be deemed to be a part of the cost of construction. This section shows that the Legislature must have used advisedly the term ''costs of construction of the road'' in section 6 and that the interest on bonds and other expenses were not treated as a part of the cost of construction. Section 5 goes further and declares that interest on bonds shall not be construed to be a part of the costs of construction in determining whether or not such costs shall exceed the benefits.

It is not within the power of the Legislature to authorize assessments in excess of the estimated benefits,

even for the purpose of paying interest on bonds (*Fitzgerald* v. *Walker,* 55 Ark. 148, *Oliver* v. *Whittaker,* 122 Ark. 291), but the Legislature can authorize the charge of interest on postponed assessments and such interest on assessments is not to be treated as a part of the cost of improvement, but may be imposed in addition to the assessed benefits. *Oliver* v. *Whittaker, supra; Pfeiffer* v. *Bertig,* 141 Ark. 531.

We adhere therefore to the conclusion announced in the original opinion and the motion to modify will be overruled.